**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR 16-8207-01-PCT-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Franklin Paul Eller, Jr., | |
| Defendant. | |

Defendant Franklin Eller is charged with sixteen counts relating to the production and receipt of child pornography. Defendant has filed seven pretrial motions to which the government has responded. The Court has scheduled a hearing for December 20, 2019, but concludes that several of the motions can be resolved without a hearing.

**I.     Background.**

This case arises from an investigation that started at FBI Headquarters. Doc. 145 at 2. Federal law requires electronic communication and remote computing service providers to report potential violations of law regarding child pornography. 18 U.S.C. § 2258A. If providers obtain actual knowledge of any facts indicating violations, they must file a report to the CyberTipline of the National Center for Missing and Exploited Children ("NCMEC"). *Id.* § 2258A(a).

On September 17, 2014, money transfer service Xoom.com filed a report regarding Yahoo! account "hannah_sweetycole@yahoo.com." Doc. 117 at 4. Yahoo! filed a report in October 2014, and reported that "hannah_sweetycole@yahoo.com" – an account located

in the Philippines – appeared to be a producer and vendor of child pornography which recruited and worked with various other Yahoo! account holders to do the same. *Id.* at 5. Yahoo! submitted an additional report to NCMEC indicating that its staff had observed the negotiation and transfer of suspect child pornography to various other Yahoo! accounts, including "baronww1." *Id.* This account belongs to Defendant.

Based on this information, District of Columbia Magistrate Judge Alan Kay issued a warrant on November 14, 2014 for the search and seizure of Defendant's Yahoo! account. *Id.* at 8. The search found a vast number of instant message conversations between Defendant and other Yahoo! users. *Id.* Among other things, these conversations indicated that Defendant attempted to set up sexually explicit shows involving minors in the Philippines, for which he paid through Western Union money transfers. Doc. 149 at 2. Using the information obtained from the Yahoo! search, an affidavit in support of an application for a federal warrant to search Defendant's residence was filed on February 18, 2015, in Flagstaff, Arizona. Doc. 119 at 2. Magistrate Judge Mark Aspey issued the warrant the same day. *Id.*

A little after 6:30 a.m. on February 27, 2015, a team of seventeen federal and local law enforcement agents executed the search warrant at Defendant's apartment in Flagstaff. Doc. 124 at 2. Defendant was awakened and handcuffed until the residence was cleared. Doc. 145 at 2. He was advised that he was not under arrest, but was briefly detained while agents secured his apartment. *Id.* Defendant thereafter agreed to speak to Special Agents Kraus and Martin in a law enforcement vehicle while other agents searched his apartment. *Id.* Defendant was seated in the front seat of the vehicle – which was unlocked – throughout the 85-minute interview. *Id.* at 12.

Before beginning the interview, Special Agent Martin advised Defendant of his *Miranda* rights. Doc. 124 at 4. Immediately after reciting the *Miranda* rights, Special Agent Kraus said the following: "And so, basically, what . . . this says is, obviously, if you need – if you want or need a lawyer *after* we kind of talk, it's totally up to you." Doc. 124 at 4 (emphasis added). Defendant responded that he just wanted "to know what's going

on" before the Special Agents proceeded with the interview. *Id.* It is not clear whether Defendant expressly waived his *Miranda* rights before continuing to answer questions throughout interview. Doc. 126-1 at 112. Defendant was not arrested that day. Doc. 146 at 4.

Agents conducted a second interview and polygraph examination of Defendant on March 2, 2015.[1] The polygraph examination was conducted by Special Agent Fuller. Doc. 126 at 4. Special Agent Martin joined Special Agent Fuller before and after the polygraph examination for a pre-examination advice of rights and a post-examination interview about the allegations. *Id.* Defendant contends that his mental state was highly unstable during the post-test interview, as he repeatedly made "inappropriate or odd references" and discussed his suicidal thoughts. Doc. 126 at 6. Defendant was not arrested that day. Doc. 146 at 5.

Defendant now faces sixteen counts of coercion and enticement of a child, and various other charges related to the production and attempted production of child pornography. Doc. 44.

## II. Multiplicitous Counts (Doc. 116).

Defendant argues that eight counts in the superseding indictment are multiplicitous. He alleges that Counts 5-8 arise out of the same facts as Counts 9-12, respectively, that Counts 5-8 charge violations of 18 U.S.C. § 2251(c)(1) while Counts 9-12 charge violations of 18 U.S.C. § 2251(a), and that the elements of these statutory provisions are the same. Defendant asks the Court to either dismiss the multiplicitous counts or require the government to make an election. *See United States v. Aguilar*, 756 F.2d 1418, 1423 (9th Cir. 1985) ("Election is explicitly approved as a remedy for multiplicity."). He asserts that proceeding to trial on multiplicitous counts will prejudice him and waste time.

The government agrees that the counts are multiplicitous: "defense counsel is correct in her analysis of § 2251(a) and § 2251(c) that the counts are multiplicitous."

---

[1] Defendant's motion identifies March 3, 2015 as the date of the interview, but the reporter's transcript states March 2. Doc. 126-2 at 17.

Doc. 144 at 1. The government nonetheless asks that all counts proceed to trial, asserting that the Court can dismiss multiplicitous counts before sentencing if Defendant is convicted on all of them. The government contends that Defendants will not be prejudiced if the jury is properly instructed, and that there will be no waste of time because "[v]irtually identical evidence will be introduced during the trial one time in support of Counts 5-8 and Counts 9-12[.]" Doc. 144 at 5.

The government generally has broad discretion to bring charges against a defendant, including multiplicitous charges, *Ball v. United States*, 470 U.S. 856, 860 n.8 (1985), but the Court concludes that the trial in this case should not include multiplicitous counts. Given the sensitive and difficult nature of this child pornography case, the Court concludes that trying overlapping counts could prejudice Defendant, confuse the jury, and prolong the trial. The Court will grant Defendant's motion and require the government to elect which counts it will pursue at trial – Counts 5-8 or 9-12 – at the hearing on December 20, 2019.

### III. Administrative Subpoenas (Doc. 118).

Defendant moves to suppress information obtained by an administrative subpoena relating to subscriber information associated with his internet protocol ("IP") address. The first three pages of Defendant's brief recite the holdings of *Carpenter v. United States*, 138 S. Ct. 2206 (2018), where the Supreme Court held that the government's acquisition of cell-site location records "was a search within the meaning of the Fourth Amendment." *Id.* at 2220. The Supreme Court declined to apply the third-party doctrine, under which the Court had previously held that individuals possess no reasonable expectation of privacy in information voluntarily turned over to a third party. *Id.* at 2216-17 (citing *Smith v. Maryland*, 442 U.S. 735, 743-44 (1979)). While Defendant is correct that the Court in *Carpenter* recognized an evolved view of the reasonable expectation of privacy one has in the digital age, he is incorrect that this privacy interest applies to basic subscriber records and IP address information. *See* Doc. 118 at 4 ("In Light of *Carpenter*, The Fourth

Amendment requires a warrant supported by probable cause to obtain the subscriber information associated with an IP address.").

Prior to *Carpenter*, numerous courts held that the government could collect IP address and subscriber information without a warrant. *See United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008); *United States v. Ulbricht*, 858 F.3d 71, 97 (2d Cir. 2017); *United States v. Caira*, 833 F.3d 803, 806-08 (7th Cir. 2016); *United States v. Wheelock*, 772 F.3d 825, 828-29 (8th Cir. 2014); *United States v. Christie*, 624 F.3d 558, 574 (3d Cir. 2010); *United States v. Bynum*, 604 F.3d 161, 164 (4th Cir. 2010); *United States v. Perrine*, 518 F.3d 1196, 1205 (10th Cir. 2008). In *Forrester*, this Circuit expressly held that individuals possess no reasonable expectation of privacy in – and thus no warrant was required for – the IP addresses of websites visited, the to/from addresses of e-mail messages, and the total amount of data transmitted to or from an account. 512 F.3d at 510. Recent cases have not interpreted *Carpenter* to indicate otherwise. *See United States v. VanDyck*, 776 Fed. App'x 495, 496 (9th Cir. 2019) (rejecting a *Carpenter*-based challenge to IP addresses and noting that the court is "bound by our decision in *Forrester*, as it is not clearly irreconcilable with *Carpenter*"); *United States v. Contreras*, 905 F.3d 853, 857 (5th Cir. 2018) (same); *United States v. McCutchin*, No. CR-17-01517-001-TUC-JAS (BPV), 2019 WL 1075544, at *2-3 (D. Ariz. March 7, 2019) (same). Because Defendant has provided no authority indicating that *Forrester* has been overruled, the Court will deny the motion to suppress.

**IV.    Motion in Limine (Doc. 134).**

Defendant moves to exclude "out-of-court statements made by declarants via Yahoo! Instant Messenger, for which the government has not or cannot provide the proper evidentiary foundation." Doc. 134.[2] This motion focuses on printouts of Yahoo! Messenger chats that allegedly occurred between Defendant and other individuals, and in which Defendant allegedly attempted to arrange live video viewing of children engaged in

---

[2] This motion was originally filed by Defendant as Doc. 129. It was later amended "to correct typographical/grammatical/stylistic errors." Doc. 134. The amended motion incorporates the exhibits submitted with the original filing.

- 5 -

sexual activity, in exchange for a payment by Defendant. Defendant objects that his right to confrontation will be violated if the individuals from the other end of these chats are not called to testify at trial, that admission of the chats would violate the hearsay rule, and that the chats are unfairly prejudicial and inadmissible under Rule 403.

Here is an example of a chat printout from the charge in Count 1:

**Eller:** Is [there] another relative who would join if I can send more

**justin:** yes sure

**Eller:** Who you think will join

**justin:** i have lots of cousin, niece here

**Eller:** How old are theu

**justin:** just let me know how much you can send frank so I know how many cousin or niece i can get

**Eller:** Well how old are they

**justin:** i have cousin's ages 9 up to 14

**Eller:** Which ones you think are the best for doing show

**justin:** and nieces ages 7 to 10

**Eller:** Because I want a good show and nothing that will be a problem.

**justin:** in cousin the age 9 and 12…for niece age 8 and 9

**Eller:** Well how much would that be with you and sister with them

**justin:** can you do 200$

**Eller:** I'll see if I can how long will show be then?

**justin:** how long you want?

**justin:** i want you to be happy and enjoy with us

**Eller:** How about 4 hours?

* * *

**Eller:** I would like to know their measurements

Doc. 149 at 2-3.

1  The Court first notes that statements made by Defendant in these chats, if offered
2  by the government, are not barred by the hearsay rule because they are statements of a party
3  opponent under Rule 801(d)(2)(A).  Nor do they violate the Confrontation Clause because
4  they are Defendant's own statements.  Thus, setting aside the Rule 403 objection for the
5  moment (to be discussed below), Defendant's motion turns solely to the other side of the
6  chats – the statements made by persons with whom Defendant was communicating.

Defendant's Confrontation Clause argument is easily resolved.  Statements from the other side of the chats do not violate Defendant's confrontation right because they are not testimonial.  *See Crawford v. Washington*, 541 U.S. 36, 59-68 (2004).  They were not made in response to inquiries from law enforcement or in any other setting that might make them testimonial.

The key question, then, is whether statements by the other participants in the chats are barred by the hearsay rule.  On this question the government makes several arguments.

**A.     Adoptive Admissions.**

The government argues that statements by other participants are admissible as Defendant's adoptive admissions under Rule 801(d)(2)(B).  "When a statement is offered as an adoptive statement, the proponent must show evidence sufficient to support a finding that the party against whom the statement is offered heard, understood, and acquiesced in the statement."  5 Weinstein's Federal Evidence § 801.31 (2019).  The government contends that Defendant's knowing and repeated participation in these chats, with no objection to their content and objective (explicit exchanges about underage girls engaging in specific sexual acts for Defendant to view by video for a fee), shows his clear understanding and acquiescence in the statements of the other participants.  Doc. 149 at 8. The fact that Defendant did not terminate the chat or object to its content, but instead pursued its objective, asking specific questions about the ages and sizes of the young girls and specifying the sex acts he wished to view, is said by the government to show a clear adoption of what the other participant in the chat was communicating.  *Id.* at 10.

A case cited by the government, *United States v. Sears*, 663 F.2d 896 (9th Cir. 1981), provides an example of the adoptive admission rule. Sears, who was one of three defendants charged with robbery, told an acquaintance the details of the robbery in the presence of the other two defendant and without any objection from them. *Id.* at 899. At trial, Sears' statements were admitted against the other defendants as adoptive admissions. *Id.* at 904. The defendants' failure to object to Sears' description of the robbery and their role in it was deemed to be an admission by them that Sears' statements were true – they effectively adopted the statements by their failure to object as the statements were made. *Id.* at 904-05. The same is true of the other adoptive admission cases cited by the government. In *United States v. Henke*, 222 F.,3d 633, 642 (9th Cir. 2000), and *United States v. White*, 681 Fed. App'x 589, 591 (9th Cir. 2017), the defendants against whom the statements were admitted knew the truth of the statements to which they acquiesced.

Under *Sears*, "[t]o constitute an admission by silence, the statement must be made in the defendant's presence and hearing, and the defendant must actually understand what was said and have an opportunity to deny it." 663 F.2d at 904. Further:

> Before admitting a statement as an admission by acquiescence, the District Court must determine, as a preliminary question, whether under the circumstances an innocent defendant would normally be induced to respond. The District Court should not submit the evidence of an admission by silence to the jury unless it first finds that sufficient foundational facts have been introduced for the jury reasonably to conclude that the defendant did actually hear, understand and accede to the statement.

*Id.* (citation omitted).[3]

---

[3] The court added: "The court's judgment, however, is only a preliminary or threshold determination. The jury is primarily responsible for deciding whether, in light of all the surrounding facts and circumstances, the defendant actually heard, understood and acquiesced in the statement." *Id.*

The Court is not certain this adoptive admission rule – that silent acquiescence in a statement constitutes adoption of its truth – applies to Defendant's Yahoo! Instant Messenger chats. Another person's statement is admissible under Rule 801 if the statement "is one the party manifested that it adopted or believed to be true." Fed. R. Evid. 801(d)(2)(B). In other words, Defendant must have adopted the statements as his own or otherwise manifested his belief that they are true. In *Sears*, that was possible because the other defendants knew the facts of the robbery and by their silence conceded the accuracy of Sears' description. But Defendant in this case did not know whether statements made by the other participants in the Yahoo! Instant Messenger chats were true. He did not know, for example, the ages of the girls, how many there were, or whether they would in fact do what he was asking. How then could his mere failure to object to those statements be deemed an adoption of the statements as true? The parties should be prepared to address this issue at the hearing December 20, 2019.

**B. Statements of Coconspirators.**

Under Rule 801(d)(2)(E), a statement "made by the party's coconspirator during and in furtherance of the conspiracy" is not hearsay. Fed. R. Evid. 801(d)(2)(E). The government argues that the other chat participants' statement are admissible as statements of coconspirators. A coconspirator statement may be admitted even though no conspiracy charge was brought. *United States v. Fries*, 781 F.3d 1137, 1151-52 (9th Cir. 2015); *United States v. Gonzalez*, 715 F.2d 1411, 1412 (9th Cir. 1983) ("It is clear that 'statements of a co-defendant are admissible . . . even in the absence of a conspiracy count where there is independent evidence of a concert of action.'") (citations omitted).

Defendant argues that there was not a "meeting of the minds" between alleged coconspirators in a criminal undertaking. Doc. 154 at 5; *United States v. Lapier*, 796 F.3d 1090, 1095 (9th Cir. 2015) (quoting *United States v. Basurto*, 497 F.2d 781, 793 (9th Cir. 1974)). Defendant also suggests that it is not entirely clear whether he sought contraband images of children, as opposed to "sexually explicit images of adults discussed in a 'kinky' way." Doc. 154 at 6.

The latter point is a jury question, but the Court agrees that whether Defendant entered into a conspiracy with the other participants in the chats is not clear from the present record. Many of the chat communications reviewed by the Court look like negotiations, with Defendant stating what he would like to watch, asking whether girls were available in ages he preferred, asking whether they were willing to perform specific sex acts, asking how much it would cost him and how soon it would be available, and, in at least one instance, stating that he was prepared to "go elsewhere" if his requests were not met. These all appear to be pre-agreement negotiations, and "[s]tatements made before a conspiracy was actually formed fall outside the realm of Rule 801(d)(2)(E)." 5 Weinstein's Federal Evidence § 801.34 (2019). Certainly the Court cannot conclude as a general matter – with respect to all of the chats – that Defendant reached an agreement with the participants that would amount to a conspiracy. This must at least be decided on a statement-specific basis. *See United States v. Johnston*, 789 F.3d 934, 937 (9th Cir. 2015) (court found conspiracy when defendant, through Yahoo! Instant Messages, sought to obtain child pornography and travel overseas to engage in sex acts with young girls and, during the communications, reached agreement and stated that he was a "partner" with the other participant).

In addition, "a co-conspirator's out-of-court statement, standing alone, is insufficient to establish that the defendant had knowledge of and participated in a particular conspiracy." *United States v. Silverman*, 861 F.2d 571, 577 (9th Cir. 1988); 5 Weinstein's Federal Evidence § 801.34 (2019). The government has not identified corroborating evidence of the conspiracies it asserts.

The parties should be prepared to address these issues at the December 20, 2019 hearing.

**C. Statements Not Offered for Their Truth.**

The government argues that the statements of the other chat participants are not offered for the truth of the matter asserted and therefore are not hearsay. *See* Fed. R. Evid. 801(c)(2). Instead, the statements of the other participants are offered to show their effect on Defendant and for background purposes. The government cites several cases and

recites general principles, but without addressing specific statements and their purpose as evidence. Doc. 149 at 14.

Defendant responds that some of the statements clearly would be offered for the truth of the matter asserted, such as the ages of the girls from whom Defendant was soliciting video sex acts. The Court is not sure this is correct. Case law applying 18 U.S.C. § 2422(b) – the statute charged in Counts 1-4 (*see* Doc. 44) – does not require proof that the girls were underage, merely proof that Defendant believed they were underage. *See United States v. Meek*, 366 F.3d 705, 721 (9th Cir. 2004) ("§ 2422(b) requires the prosecution to prove that a defendant actually knows *or believes* that the specific target of the inducement is a minor") (emphasis added); *United States v. Lindsey*, 742 F. App'x 280, 281 (9th Cir. 2018) (§ 2422(b) "imposes criminal liability when the defendant believes he is inducing a minor" even if "the object of his inducement is really an adult"); *United States v. Satterlee*, 286 F. App'x 390, 394 (9th Cir. 2008) (Defendant convicted on the basis of conversations with an undercover officer he thought was a 13 year old girl). Thus, although the Court has not yet settled jury instructions, it appears that the government will not be required to prove that the girls Defendant was seeking to view were actually children or teenagers; it will be enough if he believed they were. If this is correct, statements of other participants in the chats about the girls' ages will be admissible to show Defendant's state of mind, not to prove the actual ages of the victims.[4]

The parties should be prepared to discuss this issue on December 20, 2019.

### D. Rule 403.

Defendant argues that the chats are unduly prejudicial and should be excluded under Rule 403. Doc. 154 at 7. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice,

---

[4] The Court has not attempted to determine whether other offenses charged in the superseding indictment require proof of the victims' actual ages. If they do, then the statements of other chat participants would, at least with respect to the other charges, appear to be offered to prove the truth of the ages communicated by the other participants, which would make them hearsay.

confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

The probative value of the chat messages, if admissible, will be significant. They directly relate to the allegations involving child pornography – that Defendant attempted to entice children to engage in live video and photographed sexual acts for pay. This evidence will be prejudicial to Defendant's claim of innocence, but the Court cannot conclude that it will be unfairly prejudicial as required by Rule 403. It will prove the charges in the indictment. Portions of the chats are repulsive, but they prove charged conduct that is repulsive in the same way. The chats will not prompt the jury to convict Defendant on a basis unrelated to the actual charges. Nor does the Court find any risk of confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. If the chats are found admissible, Defendant will be free to object to any specific portions he views as unfairly prejudicial.

**IT IS ORDERED:**

1. Defendant's motion to dismiss or compel election between multiplicitous counts (Doc. 116) is **granted**.
2. Defendant's motion to suppress IP addresses (Doc. 118) is **denied**.
3. Defendant's motion in limine (Doc. 134) is **taken under advisement** and will be addressed at the December 20, 2019 hearing, along with Defendant's other pending motions.
4. Excludable delay pursuant to U.S.C. § 18:3161(h)(1)(D) is found to run from 9/17/2019.

Dated this 19th day of December, 2019.

David G. Campbell
Senior United States District Judge